Ernest C. HARPER, Appellant,

v.

STATE of Iowa, Appellee.

No. 89–1162.

Supreme Court of Iowa.

Nov. 21, 1990.

Raymond E. Rogers, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Susan Achen, Asst. Atty. Gen., and Robin Humphrey, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this postconviction relief proceeding the district court denied relief from a prison disciplinary decision imposing penalties for a rule violation. The prison has two classes of offenses denominated as Class I and Class II. A Class I offense is considered more serious and carries stricter penalties than a Class II offense.

A prison disciplinary committee found that the applicant had committed a Class I offense, disobeying a lawful order, by engaging in jiggering, a Class II offense. The applicant contended in the district court that the committee exceeded its authority in so finding. The applicant concludes from this that there is no record evidence to support the committee's finding that the applicant committed a Class I offense.

The district court concluded otherwise. We reverse and remand with directions.

At the time of the alleged rule violation, Ernest Harper, the applicant, was an inmate at the Iowa state penitentiary. According to a disciplinary notice, a correc-

tional officer saw a "jigger string" coming from cell H–2 to Harper's cell. A jigger string is used to move objects between cells. The officer also saw a TV cable coming out of Harper's vent. The TV cable was apparently being directed to hook onto the jigger string.

Later, officers searched Harper's cell. They found what they believed to be an altered TV cable and an altered headphone. The disciplinary notice charged Harper with two offenses: violating the written rule prohibiting jiggering (a Class I offense and referred to in this opinion as rule 23) and possession of altered property (a Class I offense and referred to in this opinion as rule 16).

The hearing was held several days later. The prison disciplinary committee found that Harper had committed both offenses. It assessed Harper "ten days of disciplinary detention, loss of sixteen days good time, in addition to any other disciplinary sanction, invoke any suspended disposition, plus fifteen days administrative segregation."

Harper appealed the committee's decision to the warden and later to the Iowa department of corrections. Harper contended there was no evidence to support a violation of either offense. The warden and the department affirmed the committee's decision and its disposition.

Harper then filed an application for postconviction relief in the district court. *See* Iowa Code § 663A.2(6) (1987). He alleged the same infirmity in the committee's decision that he raised in his appeals to the warden and the department. He asked the court to dismiss the disciplinary notice and order it expunged from his record. Harper also asked the court to order return of his good time.

Harper's attorney filed an amendment to the application based on the following grounds:

(1) A complete and thorough investigation was not made to provide factual information to the disciplinary committee;

(2) There was no evidence to show the committee that a direct order had been given to the applicant;

(3) There was no evidence that the applicant had anything unauthorized in his possession; and

(4) The applicant was incorrectly charged with the violation.

With court approval, Harper's attorney again amended the application. This amendment stated "the violations herein, if found to be true, should have been a minor and not a major rule violation; therefore, no good time should have been taken."

Harper appealed and testified at the postconviction relief hearing. Harper conceded he was familiar with rules 16 and 23. Harper also conceded he was aware the rule against jiggering was in a minor report policy of the institution. However, he denied he was ever given a direct order to refrain from jiggering.

The district court found that there was insufficient evidence to support a rule 16 violation (possession of altered property) for two reasons. First, the disciplinary notice did not state how the property was altered. And second, the committee did not examine the property.

As to the rule 23 violation, the district court ruled that

[t]he committee, in its decision, found that "jiggering" is prohibited by a written policy. The committee therefore concluded that violating a written policy prohibiting an act is tantamount to refusing to obey a written rule. The court concludes that this finding is correct and the officer's report itself is some evidence of the violation.

Since there is evidence to support a finding that rule 23 was violated, this resolves the question of whether the report should have been a major or minor report. Violation of rule 23 constitutes a major infraction and the authorities have a certain amount of discretion in deciding whether to treat rule infractions as major or minor offenses. So long as there is evidence to support the findings that a major rule was violated, this court will not second guess the prison authorities

in their decision to treat the matter as a major infraction.

The court remanded the case to the disciplinary committee to make a new assessment of the penalty. The court ordered that this assessment be based only on the rule 23 violation (disobeying a lawful order).

Harper appealed, challenging the district court's ruling on the rule 23 violation. Harper contends there is no evidence that he violated rule 23. We agree.

Iowa Code section 246.505 pertinently provides:

> 1. Inmates who disobey the disciplinary rules of the institution to which they are committed shall be punished by the imposition of the penalties prescribed in the disciplinary rules, according to the following guidelines:
>
> . . . .
>
> e. To define the elements of each offense and the penalties which may be imposed for violations. . . .

We think this provision authorizes prison officials to define Class I and Class II offenses and penalties for their violations. Pursuant to this section the "Blue Book" defines the elements of Class I offenses. The Blue Book is a compilation of the rules, regulations, and disciplinary procedures governing the conduct of the Iowa state penitentiary inmates. *See generally* Iowa Department of Corrections, Rules, Regulations, and Disciplinary Procedures for the Government of the Iowa State Penitentiary Inmates (May 16, 1984). There are forty-one Class I offenses. *Id.* at II–G–45 to –56. The Blue Book provides penalties for their infractions. *Id.* at II–G–40 to –43.

The Blue Book also covers Class II offenses:

> *IV. CLASS II OFFENSE—INSTITUTIONAL REGULATIONS.*
> Policy
> A. The institution may with the approval of the Director, establish additional rules consistent with the Department policy which are necessary or desirable for the safe and efficient operation of that institution. Such rules may concern inmate behavior not prohibited by the Class I rules outlined in this manual. In addition, said rules may address behavior similar in character to that regulated by Class I rules but which is not serious enough to warrant Class I (lost time) treatment. Such rules shall be Class II offenses and need not be processed in the same manner as Class I offenses. All Class II rules shall be in writing and available to the inmates of the appropriate institution.

*Id.* at II–G–70. We think this provision means Class II rules may concern behavior similar or dissimilar in character to that regulated by the listed Class I rules. Class II rules must be in writing and available to the inmate.

A further Blue Book provision gives the prison security director the authority to determine whether the infraction is a Class I or Class II violation. The security director reviews or determines the classification of the offense listed on a disciplinary report. *Id.* at II–G–58.

■ With this background we turn to rule 23, which provides:

> 23. *Disobeying a Lawful Order:* An inmate commits an offense under this subsection when the inmate *refuses* to obey an order, *rule, regulation, or procedure, written or verbal, given* by any staff of the Division of Corrections, or other person in authority. . . .

*Id.* at II–G–52 (emphasis added).

There are two key words in the rule: "refuses" and "given." "Refuses" implies two things. First, the inmate must receive a direct order to refrain from conduct that is violative of a rule, regulation, or procedure. Second, the inmate must decline to obey the order by continuing the offensive conduct. *See Webster's New World Dictionary* 396 (mod. desk ed. 1968) (refuse: "to decline to do").

"Given," as used in the rule, also implies two things. First, the order must come from a staff person or other person in

authority. Second, the order must be communicated to the inmate.

 Here there is no evidence that any staff person or other person in authority told Harper that jiggering was prohibited by the prison rules. Nor is there any evidence that once this was communicated to Harper, he continued to "jigger."

Contrary to the district court's conclusion, we conclude there is no evidence to support a finding that Harper violated rule 23. *See Mahers v. State*, 437 N.W.2d 565, 569 (Iowa 1989) (some evidence is needed under the due process clause to justify a prison disciplinary action).

In reaching our conclusion we do not ignore the prison authorities' broad discretion in prison disciplinary matters. But the district court's interpretation would give prison authorities unfettered discretion to charge a more serious offense when only a minor offense has been committed. At their whim they could turn even the most insignificant infraction into a serious violation. That would make a sham of the present classification for Class I and Class II offenses. Fairness and justice dictate against such a result.

We reverse and remand. On remand the district court shall enter an appropriate order concerning Harper's requested relief.

REVERSED AND REMANDED WITH DIRECTIONS.